UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:14-CV-23630-UU

JESSE MICHALETZ and AMANDA
DUGAN-MICHALETZ,

            Plaintiffs,

v.

APPLE LEISURE GROUP d/b/a
AMResorts, L.P. a/k/a Unlimited Vacation
Club, a foreign profit corporation, and GBS
INTERNATIONAL, INC., a domestic for-
profit corporation,

            Defendants.

**DEFENDANT AMRESORTS, L.P.'s MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT PURSUANT TO RULES 12(b)(1) AND 12(b)(6)
AND MEMORANDUM OF LAW**

Pursuant to Rules 12(b)(1) and 12(b)(6), Defendant AMResorts, L.P. (as successor by merger to AMResorts, LLC), sued as "Apple Leisure Group d/b/a AMResorts, L.P. a/k/a Unlimited Vacation Club" (referred to herein as "AMResorts"),[1] moves to dismiss: (a) Plaintiffs Amended Complaint in its entirety because Plaintiffs have once again sued the wrong party; (b) Counts I and II brought under the Florida Consumer Collection Practices Act ("FCCPA") because the FCCPA is inapplicable to this case; and (c) Counts III and IV brought under the Telephone Consumer Protection Act ("TCPA") because Plaintiffs allege no facts that AMResorts made or authorized the making of any phone calls to Plaintiffs.

---

[1] Even though AMResorts has repeatedly explained that "Apple Leisure Group" is not a legal entity (ECF No. 17), Plaintiffs have once again sued this non-existent entity. Moreover, while AMResorts, L.P. is an independent legal entity, it is not known as "Unlimited Vacation Club." As explained herein, Plaintiffs have sued the wrong entity.

## I.     **INTRODUCTION**

This case arises from Plaintiffs' failure to pay a debt relating to a membership agreement in a timeshare vacation club that Plaintiffs entered into with a third party (not named in the Amended Complaint) and that authorized Defendant GBS International, Inc. ("GBS") to collect this debt.  The debt itself is not disputed.  However, Plaintiffs allege that GBS improperly sent billing statements and emails and placed telephone calls to Plaintiffs to collect the debt, after Plaintiffs purportedly revoked their consent to be contacted about it.  Plaintiffs allege that GBS sought to collect this debt on "behalf" of AMResorts, even though AMResorts was not a party to the membership agreement and Plaintiffs fail to allege any facts sufficiently connecting AMResorts to Plaintiffs' debt or to any debt collection efforts.  Plaintiffs also allege that an entity known as "Unlimited Vacation Club" sent emails to Plaintiffs about the debt, but do not and cannot assert any facts to connect AMResorts to these communications or this entity.

In its initial motion to dismiss, AMResorts demonstrated that Plaintiffs sued the wrong party and that Florida law is inapplicable.  (ECF No. 14.)  Plaintiffs have not cured—and cannot cure—these fundamental defects.  Nonetheless, Plaintiffs persist in asserting claims against AMResorts for alleged violations of the FCCPA (Counts I and II) and the TCPA (Counts III and IV).  Once again, each of these counts fails as a matter of law.

*First*, the Court should dismiss all of Plaintiffs' claims against AMResorts (Counts I-IV) because Plaintiffs have sued the wrong party.  Once again, Plaintiffs have failed to allege any facts connecting AMResorts to Plaintiffs' debt or any debt collection efforts.  Indeed, the very membership agreement giving rise to the debt (the "Membership Agreement") establishes that Plaintiffs entered into the transaction with a third party and foreign corporation, Club De Descuentos Vacacionales DR, LLC ("CDDVD"), and that CDDVD owns Plaintiffs' debt and has the relationship with GBS.  CDDVD is not before the Court.

-3-

At most, Plaintiffs identify emails that were sent by "Unlimited Vacation Club" to Plaintiffs about their debt and allege in conclusory fashion that AMResorts does business as "Unlimited Vacation Club." But Plaintiffs allege no facts to support this conclusion. Plaintiffs do not allege what type of business AMResorts operates, how it is supposedly connected to "Unlimited Vacation Club," or why AMResorts has any connection to Plaintiffs' debt. Plaintiffs attach two emails from "Unlimited Vacation Club" that reference the trademark "AMResorts®", but allege no facts to show that AMResorts sent those emails—which were sent from a location in Mexico, not Pennsylvania (where AMResorts is headquartered). Indeed, the Membership Agreement makes clear that "Unlimited Vacation Club" is the name of the vacation club that Plaintiffs joined, which is operated by CDDVD (not AMResorts). Because the very documents that Plaintiffs rely upon show that they sued the wrong party, all claims against AMResorts should be dismissed.

*Second*, even if Plaintiffs had standing to bring this action against AMResorts (which they do not), Plaintiffs' TCPA claims (Counts III and IV) fail as a matter of law. Plaintiffs do not allege that AMResorts made any phone calls to Plaintiffs. And although Plaintiffs make the conclusory assertion that GBS placed calls "on behalf of" AMResorts, Plaintiffs assert no facts to support this conclusion or to show any relationship between AMResorts and GBS. The Membership Agreement further confirms that any debt collection efforts by GBS were done on behalf of CCDVD—not AMResorts. Thus, Plaintiffs' TCPA claims must be dismissed.

*Lastly*, Plaintiffs' FCCPA claims (Counts I and II) are fundamentally flawed. Plaintiffs are Washington residents, and the Amended Complaint and its exhibits affirmatively show that Florida law does not apply to this case under Florida choice of law rules because billing statements and phone calls were allegedly made to Washington, not Florida. Under Florida choice of law rules, Florida law is inapplicable and Plaintiffs' FCCPA claims should be dismissed.

## II.     FACTUAL BACKGROUND

This lawsuit concerns debt collection efforts arising from Plaintiffs' purchase of a membership in a vacation timeshare club (the "Membership Agreement") "referenced by account number ending in -0835." (*See e.g.*, Am. Compl. ¶ 8, Exs. A1, D, E1.) Although AMResorts is named as a Defendant, AMResorts is not alleged to be in any way connected with this transaction or any debt collection activities.

### A.     The Membership Agreement Between Plaintiffs And CCDVD

The Membership Agreement shows that Plaintiffs entered into the vacation discount transaction with a third-party, CDDVD, not AMResorts. (*See* Membership Agreement, attached hereto as Ex. 1, at 4 of 4.) The Membership Agreement also makes clear that CCDVD operates the "Unlimited Vacation Club," which is the network of *suppliers* providing vacation discounts, and that AMResorts is just one of those *suppliers*. (*Id.* at 1 of 4 (noting that CDDVD has "organized a network of service providers that secures the Discounts for its Customers through the use of a Membership Number (such number, the 'Membership Number' and such network, the 'Unlimited Vacation Club'")); *id.* at Ex. A to Membership Agreement (listing AMResorts as one of several suppliers for the "Unlimited Vacation Club" run by CCDVD).)

Under the Membership Agreement, Plaintiffs promised to make monthly payments to CDDVD. (*Id.* at Ex. C.) Plaintiffs further acknowledged that CDDVD "entered into an agreement with GBS . . . to manage the [debt] collection process," and Plaintiffs agreed to make all payments to GBS for the benefit of CDDVD. (*Id.* at Ex. D.)[2]

---

[2]     The Court can consider this Membership Agreement at the motion to dismiss stage because it is referenced in the Complaint (Am. Compl. ¶¶ 3, 8, 19-20, Exs. A1-A2; B; D) and is central to Plaintiffs' claims. *See SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). Alternatively, the Court may consider extrinsic evidence when deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.,* 524 F.3d 1229, 1232 (11th Cir. 2008).

### B. Debt Collection Activities By GBS And "Unlimited Vacation Club"

Plaintiffs allege that to collect this debt, GBS sent "billing statements" (Am. Compl. ¶ 22), placed "telephone calls" (*id.* ¶ 23), and sent "e-mail message[s]" to Plaintiffs (*id.* ¶ 24.) Plaintiffs contend that GBS purportedly engaged in these efforts after Plaintiffs provided notification that they retained counsel with regard to the debt and revoked consent to be contacted regarding their failure to pay that debt. (*Id.* ¶ 19.) Plaintiffs allege in conclusory fashion that GBS did this "on AMResort's behalf" (*id.* ¶¶ 22-23), but Plaintiffs allege no facts to support that claim.

Plaintiffs further allege that AMResorts sent emails to Plaintiffs about their debt. (*Id.* at ¶¶ 24, 25, 27-33, 42-44, 49-52, 57-59, 65-68, 76-79, 87-89, 99-102, 116-122, 128.) But Plaintiffs' exhibits confirm that each of those emails was sent by "Unlimited Vacation Club" (not AMResorts) and Plaintiffs allege no facts linking AMResorts to this company. (*See* Am. Compl., Exs. G2, I-L, N-Z.) Several exhibits show that "Unlimited Vacation Club" operates from Mexico (*see id.*, Exs. B, MM), yet Plaintiffs allege that AMResorts is a Pennsylvania company. (*Id.* at ¶ 4.)

In addition, Plaintiffs do not allege that they have any connection to Florida. To the contrary, the Amended Complaint shows that billing statements were sent to Plaintiff Jesse Michaletz at "220 SE 10th Circle, North Bend, Washington 98045." (Am. Compl., Exs. D, F.) Likewise, the alleged telephone calls were placed to phone numbers beginning with a "206" area code, which is a Washington area code, not a Florida area code. (*Id.* ¶ 14.)

### C. Plaintiffs' Amended Complaint

Plaintiffs' Amended Complaint asserts claims against AMResorts for alleged violations of the FCCPA (Counts I and II) and for alleged violations of the TCPA (Counts III and IV). For numerous reasons, as described below, all claims against AMResorts fail for lack of standing and on their merits.

III. **LEGAL ARGUMENT**

    A. **All Of Plaintiffs' Claims (Counts I-IV) Against AMResorts Fail Because Plaintiffs Lack Standing To Sue AMResorts And Fail To Allege Facts To Show That AMResorts Engaged In Any Wrongdoing.**

All of Plaintiffs' claims against AMResorts should be dismissed under Rule 12(b)(1) for lack of jurisdiction and/or under Rule 12(b)(6) for failure to state a claim. To have Article III standing to bring their claims and as an element of each of those claims, Plaintiffs must allege facts to show that AMResorts—and not some other party—engaged in some wrongdoing that purportedly harmed the Plaintiffs. *See, e.g., Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265 (11th Cir. 2011) (describing requirements for Article III standing); 47 U.S.C. § 227(b)(1) (describing conduct needed to violate TCPA); Fla. Stat. § 559.72 (describing conduct needed to violate FDCPA).

Indeed, to satisfy their Article III burden alone, Plaintiffs must allege facts to show, among other things, "'a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and *not* the result of the independent action of *some third party not before the court*.'" *Hollywood*, 641 F.3d at 1265 (quoting *Lujan*, 504 U.S. at 560) (emphasis added). Likewise, to satisfy their burden of stating a plausible claim, Plaintiffs must plead more than "unadorned, the-defendant-unlawfully-harmed-me" allegations and may not rely upon "legal conclusions" and "conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 556–57, 566–67, 570 (2007) (plaintiff must allege factual allegations that transcend the "speculative," "conceivable," and "possible" and that "state a claim to relief that is plausible on its face").

Applying these well-settled principles, courts often dismiss claims for lack of Article III standing and/or for failure to state a claim when the plaintiff fails to allege facts showing that a particular defendant committed a wrongful act. *See Hollywood*, 641 F.3d at 1265-66 (dismissing

complaint for lack of Article III standing where "Hollywood named the Secretary as a defendant and described some responsibilities of his office, but failed to allege an action of the Secretary that had caused Hollywood any injury."); *Romanello v. Bank United, Inc.*, No. 5:12-CV-371-FL, 2013 WL 6531082, at *4, 9 n.9 (E.D.N.C. Dec. 12, 2013) (dismissing Fair Debt Collection Practices Act claim under 12(b)(6) because "plaintiffs have sued the wrong party"); *Molina v. F.D.I.C.*, 870 F. Supp. 2d 123, 129 (D.D.C. 2012) *aff'd sub nom.*, *Molina v. Ocwen Loan Servicing*, 545 F. Appx. 1 (D.C. Cir. 2013) (dismissing complaint alleging violations of Fair Debt Collection Practices Act because complaint alleged "no harms suffered by plaintiff [that] can be fairly traced to" the defendant); *Smith v. U.S. Bank, N.A.*, CIV. No. 10-3077-CL, 2011 WL 2470100, at *6 (D. Or. Apr. 22, 2011) (dismissing complaint alleging statutory violations relating to debt collection practices because "Plaintiffs' FAC lists [the defendants] in the section identifying and describing the parties, but does not otherwise describe any alleged conduct by these defendants").

Here, Plaintiffs continue to ignore that AMResorts is not a proper defendant and have again asserted claims against the wrong party.  Plaintiffs allege that GBS sent improper communications and made improper telephone calls on "behalf" of AMResorts in an "attempt to collect [Plaintiffs'] Debt."  (Am. Compl., ¶¶ 22-24.)  But Plaintiffs fail to allege facts showing that AMResorts has any connection to this "debt," much less that GBS acted on AMResorts' "behalf" or that GBS has any relationship with AMResorts.  These failures alone are fatal to Plaintiffs' claims against AMResorts.  *See, e.g., Speidel v. JPMorgan Chase & Co.,* No. 2:13-cv-852-FtM-29DNF, 2014 WL 582881, at *2 (M.D. Fla. Feb. 13, 2014) (dismissing claims under FCCPA and TCPA due to failure "to identify defendant's connection to the debt" and lack of "adequate factual support" for claims).

In fact, the documents that Plaintiffs rely upon confirm the opposite.  Plaintiffs assert that the debt at issue arises from the Membership Agreement.  (*Id.* ¶ 8, Exs. A1, D, E1.)[3]  As that

---

[3] As described in footnote 2, the Court can consider this contract in ruling on the motion to dismiss.

Membership Agreement makes clear, Plaintiffs did not enter into the transaction with AMResorts, but with an entity named Club De Descuentos Vacacionales Dr, LLC.  (Ex. 1, Membership Agreement, at 4 of 4.)  It is this entity that owns the debt at issue—not AMResorts.  (*Id.* at Ex. C.)  It is also this entity that has the agreement with GBS to collect such a debt—not AMResorts.  (*Id.* at Ex. D.)  Thus, not only do Plaintiffs fail to allege facts showing that GBS sent communications on AMResorts' "behalf," the very agreement giving rise to the debt at issue shows that AMResorts has no connection to this case.  (Ex. 1, Membership Agreement, at 4 of 4, "Article Fourteen" (indicating that notices should be sent to CDDVD *and* GBS).)

In an effort to manufacture standing, Plaintiffs also allege that AMResorts sent Plaintiffs "email messages" in an attempt to collect the debt.  (Am. Compl. at ¶¶ 24, 25, 27-33, 42-44, 49-52, 57-59, 65-68, 76-79, 87-89, 99-102, 116-122, 128.)  But the very exhibits attached to the Amended Complaint show that these emails were not sent from AMResorts, but from an email address associated with "Unlimited Vacation Club."  Even the letter allegedly revoking consent to contact Plaintiffs was sent to "Unlimited Vacation Club."  (Am. Compl. Ex. A1-A2.)  Although Plaintiffs make the conclusory assertion that AMResorts does business as "Unlimited Vacation Club" (Am. Compl. ¶ 4), Plaintiffs allege no facts about AMResorts' corporate structure, much less any facts to show how it operates, that it does so as "Unlimited Vacation Club," or that it was somehow involved with Plaintiffs' debt.  In addition, the Membership Agreement makes clear that CCDVD operates the "Unlimited Vacation Club" and that AMResorts is just one of many suppliers of discounted services that form this network.  (Membership Agreement, Ex. 1, at 1 of 4; *id.* at Ex. A.)[4]

---

[4] In the Membership Agreement, Unlimited Vacation Club is used interchangeably with CCDVD. Indeed, Plaintiffs agreed that they were "contracting [with] the Unlimited Vacation Club voluntarily and have not been driven to enter into the [] Agreement by any external or sales pressure." (Ex. 1, at Customer Acknowledgement, p. 14, ¶ 13.)

At most, Plaintiffs identify two emails (out of the many attached to the Amended Complaint) that refer to the registered trademark "AMResorts®" (*id.* ¶¶ 20, 121), but Plaintiffs allege no facts to connect AMResorts (the company) to those communications. In fact, those two emails were sent by "Unlimited Vacation Club" from an address in Mexico (*id.* at Exs. B, PP.)—yet AMResorts is alleged to be a Pennsylvania corporation. (*Id.* at ¶ 4). Put simply, Plaintiffs sued the wrong party. Thus, all claims against AMResorts fail for lack of Article III standing and on their merits.

### B. Even If Plaintiffs Had Not Sued The Wrong Party, Plaintiffs' TCPA Claims (Counts III And IV) Against AMResorts Fail As A Matter Of Law.

Plaintiffs bring claims under § 227(b)(1)(A) of the TCPA, which makes it unlawful for "[a]ny person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii). Thus, Plaintiffs must allege facts to show that AMResorts was involved in the "mak[ing]" of a telephone call to Plaintiffs without their consent.

Plaintiffs have not come close to satisfying this burden. Even if AMResorts were somehow connected to Plaintiffs' debt (and it is not), Plaintiffs acknowledge that *all* telephone calls were placed by GBS—not AMResorts. (Am. Compl. ¶¶ 23, 35-41, 45-48, 53-56, 59-64, 69-75, 80-86, 90-93, 95-98, 103-115, 123-126.) Although Plaintiffs conclude that GBS did so "on behalf" of AMResorts (*id.* at ¶ 23), Plaintiffs allege no facts to establish such an agency relationship. Plaintiffs do not allege that AMResorts had any contact with GBS, much less any facts to show that AMResorts controlled GBS or somehow gave GBS authority to act on its behalf. Indeed, the Membership Agreement confirms that GBS acted to collect the debt of CCDVD—not AMResorts. Thus, even if Plaintiffs had not sued the wrong party, the TCPA claims against AMResorts must be dismissed with prejudice. *See, e.g., Jacobs v. Waddell, Inc.,* No. 4:14-cv-432, 2014 WL 6607183,

at *2 (E.D. Mos. Nov. 19, 2014) (dismissing TCPA claim because "there are no factual allegations in the complaint that support Waddell was acting as Bunn's agent when it sent the fax(es)" to plaintiff); *Freidman v. Massage Envy Franchising, LLC*, No. , 2013 WL 3026641, at *3-4 (S.D. Cal. June 13, 2013) (dismissing TCPA claim because plaintiffs failed to allege facts showing agency relationship between defendant and sender of text messages at issue and rejecting conclusory allegations that sender was "acting as an agent and/or employee" of defendant as insufficient to state claim).[5]

### C. The FCCPA Claims (Counts I and II) Should Be Dismissed For The Additional Reason That Florida Law Is Inapplicable.

The Amended Complaint and its exhibits affirmatively show that any alleged collection efforts were received by and impacted the Plaintiffs in Washington, *not* Florida. Under Florida choice of law rules, this forecloses Plaintiffs' FCCPA claims as a matter of law.[6]

An FCCPA claim is one sounding in tort. *See Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 834 n.4 (11th Cir. 1982). With regard to tort claims, Florida courts apply "the 'most significant relationship' test set forth in the Restatement (Second) of Conflict of Laws § 145." *Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc.*, 92 F. 3d 1110, 1115–16 (11th Cir. 1996). In determining which state has the most significant relationship, courts "take into account the following contacts: '(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place

---

[5] In addition, as demonstrated by GBS in its motion to dismiss (and which is incorporated herein by reference), Plaintiffs provided express consent to be contacted about their debt by GBS in the Membership Agreement and any notice that Plaintiffs sent purporting to revoke their consent was insufficient as a matter of law to do so. (ECF No. 23, at 4-7.) For this reason, too, Plaintiffs' TCPA claims (which are based solely on alleged telephone calls made by GBS) fail as a matter of law against AMResorts.

[6] This Court applies Florida choice of law rules when deciding state law claims over which it has supplemental jurisdiction. *Palm Beach Golf Center-Boca, Inc. v. Sarris,* 771 F.3d 1274, 1289 (11th Cir. 2014); *Ideal Electronic Sec. Co., Inc. v. Int'l Fidelity Ins. Co.*, 129 F.3d 143, 148 (D.C. Cir. 1997) ("When deciding state-law claims under diversity or supplemental jurisdiction, federal courts apply the choice-of-law rules of the jurisdiction in which they sit").

of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.'" *Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1365 (S.D. Fla. 2007) (quoting Restatement (Second) of Conflict of Laws § 145(2)).[7]

Applying this test, courts routinely hold that the law of the place where the injury occurred governs the tort-based claim, even when the defendant is headquartered in a separate state. *See Berry*, 497 F. Supp. 2d at 1366 (dismissing consumer protection claims brought under New Jersey law because dispute is governed by law of state in which each plaintiff received alleged misrepresentations, rather than where defendant was headquartered); *Hutson v. Rexall Sundown, Inc.*, 837 So. 2d 1090, 1094 (Fla. 4th DCA 2003) (applying law of state where "alleged wrong was committed, and the damage done, at the site of the sale of appellees' products," as opposed to law of state of defendant's headquarters).

Here, while Plaintiffs allege that GBS is headquartered in Florida and AMResorts is headquartered in Pennsylvania (Am. Compl. ¶¶ 5-6), the Amended Complaint and its exhibits make clear that any alleged harm or "invasion" from the debt collection efforts took place in Washington. The purported "billing statements" upon which Plaintiffs base their claims were sent to Plaintiff Michaletz's address in Washington. (Am. Compl., Exs. D, F (showing statements were sent to 220 SE 10th Circle, North Bend, Washington 98045).) Similarly, the alleged "telephone calls" at issue are alleged to have been made to the Plaintiffs' phone numbers starting with area code "206" (Am. Compl. ¶ 14), which is also a Washington area code, *not* a Florida area code. *See* http://www.utc.wa.gov/regulatedIndustries/utilities/telcom/Pages/areaCodes.aspx (indicating that

---

[7] In addition, because an FCCPA claim is akin to an invasion of privacy tort, *see e.g.*, *Brandt v. I.C. Sys., Inc.*, No. 8:09-CV-126-T-26MAP, 2010 WL 582051, at *3 (M.D. Fla. Feb. 19, 2010), Section 152 of the Restatement (Second) of Conflicts applies. This choice of law rule provides that "the local law of the state where the invasion occurred determines the rights and liabilities of the parties . . . [unless] some other state has a more significant relationship . . . ." *Id.* The comments to the Restatement make clear that "the place of the invasion is the place where the plaintiff was at the time" of the alleged tort. *Id.* cmt. c. Here, as described above, the place of the alleged "invasion" is Washington—not Florida.

area code 206 is a Washington state area code).[8]  As a result, the Amended Complaint affirmatively shows that the debt collection efforts, and any alleged "damages" to the Plaintiffs from those efforts, occurred in Washington—not Florida.[9]

Put simply, Florida law is not applicable to this case because the Amended Complaint and its exhibits make clear that the alleged collection efforts reached the Plaintiffs in Washington, not Florida, and that any alleged harm occurred there.  Under Florida choice of law principles, Florida does not have the most significant relationship to this case and Plaintiffs' FCCPA claims should be dismissed with prejudice.

C.   **CONCLUSION**

Based on the foregoing, AMResorts requests that the Court grant its motion to dismiss and dismiss all claims against AMResorts with prejudice.

Dated:  December 19, 2014

Respectfully submitted,

*s/ Brian M. Ercole*
Brian M. Ercole
Florida Bar No. 0102189
bercole@morganlewis.com
David C. Behar
Florida Bar No. 0097807
dbehar@morganlewis.com
Morgan Lewis & Bockius LLP
200 South Biscayne Boulevard – Suite 5300
Miami, Florida 33131 2339
Telephone:  305.415.3000
Facsimile:  305.415.3001

*Counsel for Defendant AMResorts, L.P.*

---

[8]   The Court may consider this information, which is publically available on the State of Washington's governmental website, at the motion to dismiss stage.  *See Halmos v. Bomardier Aerospace Corp.*, 404 Fed. Appx. 376, 377 (11th Cir. 2010) (holding that "a district court may take judicial notice of matters of public record" at the motion to dismiss stage); *Hammond v. Anderson*, No. 8:10-CV-1557-T-30EAJ, 2010 WL 2836716, at *2 n.1 (M.D. Fla. July 19, 2010) (taking judicial notice of information available on governmental website at the motion to dismiss stage).

[9]   Plaintiffs do not identify which specific communications originated from Florida.  Indeed, at least two exhibits show that emails were sent from a company in Mexico.  (Am. Compl., Exs. B, PP.)

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I hereby certify that a true and correct copy of AMResorts, L.P.'s Motion To Dismiss Plaintiffs' Amended Complaint Pursuant To Rules 12(b)(1) And 12(b)(6) And Memorandum Of Law was filed electronically and served on all counsel of record on December 19, 2014 via the Court's ECF system.

*s/ Brian M. Ercole*
Brian M. Ercole